IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ZARED KINAH JONES,                    )
                                      )
            Plaintiff,                )
                                      )
        v.                            )       1:19CV930
                                      )
S.A. ALVAREZ, J.M. CHAVEZ,            )
K.R. JOHNSON, F.T. WRIGHT,            )
CITY OF GREENSBORO, WAYNE             )
SCOTT, S.K. FLOWERS,                  )
SGT. S.K. WRIGHT, A.G. LEWIS,         )
D.C. FLEMING, D.M. HARMON,            )
J.T. HARRILL, and M.J. MOLSON,        )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss
Plaintiff's Amended Complaint filed by Defendants S.A. Alvarez,
J.M. Chavez, K.R. Johnson, F.T. Wright, Wayne Scott, S.K.
Flowers, and the City of Greensboro. (Doc. 22.) Also before the
court is a Motion to Dismiss Plaintiff's Amended Complaint filed
by Defendants A.G. Lewis, D.C. Fleming, D.M. Harmon, J.T.
Harrell and M.J. Molson. (Doc. 37.) On September 18, 2020,
Plaintiff, proceeding pro se, filed a Motion for Extension of
Time to Respond, (Doc. 44), seeking additional time to respond
to Defendants' Motion to Dismiss, (Doc. 37). This final Motion
to Dismiss was filed in February, 2020, (id.), more than six

months prior to Plaintiff's most recent Motion for Extension of Time. Thus, Plaintiff's Motion for Extension of Time is untimely. Moreover, Plaintiff has already responded to Defendants' Motion to Dismiss by filing a Response. (Doc. 43). For these reasons, this motion will be denied.

## I.   STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

### A.   Statement of the Facts

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020). The facts, taken in the light most favorable to Plaintiff and as alleged in the Amended Complaint are as follows.

Plaintiff alleges that he and three companions arrived in downtown Greensboro around 10:30 p.m. on September 9, 2016.[1] (Amended Compl. ("Am. Compl." (Doc. 16) at 7.)[2] At various times

---

[1] Although Plaintiff alleges in the Amended Complaint the dates of "9/10/2016-09/11-2016" as the relevant dates, (Am. Compl. (Doc. 16) at 6), Plaintiff concedes in his response that the relevant time period is from 10:30 p.m. on September 9, 2016 through 4:00 a.m. on September 10, 2016, (Doc. 39 at 10). This court finds that the relevant activity occurred on September 9 and 10, 2016.

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

after arrival, Plaintiff alleges three unconstitutional interactions with law enforcement.

The first interaction occurred on South Elm Street in downtown Greensboro. (Am. Compl. (Doc. 16) at 7.) Plaintiff alleges that he was surrounded by Officers Alvarez, Chavez, Johnson, F.T. Wright, Flowers, S.K. Wright[3], Lewis, Fleming, Harmon, Harrill, and Molson of the Street Team Bike Squad. (Id.) Plaintiff further alleges that these officers unlawfully restrained his movement and he was detained and unlawfully interrogated. (Id.) Plaintiff contends he was required to answer questions. (Id.) After a prolonged period of time, Plaintiff alleges he was then granted permission to leave. (Id.) Plaintiff generally refers to violations of his 14th and 5th Amendment rights. (See id. at 5.) However, this first law enforcement interaction is more appropriately construed as a claim of

---

[3] Plaintiff alleges claims against a defendant identified as "S.K. Wright." However, as Defendants point out, there has never been service upon an individual identified as "S.K. Wright." (See Doc. 23 at 3 n.1; Doc. 29; Doc. 38 at 2.) Those claims will be dismissed without prejudice for failure to effect service of process as required by Fed. R. Civ. P. 4(m).

unconstitutional detention in violation of the Fourth Amendment prohibition against unreasonable seizure.[4]

After being allowed to leave, Plaintiff alleges the second unconstitutional interaction occurred when these same officers conducted "unwarranted surveillance" by following Plaintiff for several blocks on North Elm Street, up until he arrived at his destination on West McGee Street. (Id.)

The third interaction occurred after Plaintiff arrived at his destination on North Elm Street, the "Boiler Room" establishment. Plaintiff alleges he was assaulted by two unknown assailants at the Boiler Room. (Id.) Plaintiff alleges two separate unconstitutional actions by law enforcement during this interaction at the Boiler Room.

First, Plaintiff contends he sought assistance from the officers and was then improperly detained. Plaintiff alleges that he approached Alvarez and asked for help; at which point he was told to "Go Away You Dont [sic] Belong Down Here." (Id.)

_____

[4] Although a court is required to construe pro se pleadings liberally, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), such liberal construction does not "undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (citations omitted). Plaintiff's claim of a Fifth Amendment violation, or a separate due process violation under the Fourteenth Amendment, are simply labels which have no basis in fact as to this first interaction.

-4-

Plaintiff then approached Johnson and asked for help, though Johnson initially refused assistance. However, Johnson then "agreed to adhere to established policy and began an investigation establishing [Plaintiff's] role as a victim/complaining witness." (Id. at 10.) Johnson then allegedly walked away with Plaintiff's driver's license and refused to return it. Plaintiff contends he was detained by Johnson's act of retaining Plaintiff's driver's license. (Id.) Plaintiff also alleges Johnson detained him by show of authority. (Id.)

Second, Plaintiff contends he was unconstitutionally arrested at the Boiler Room by Flowers and Alvarez. Plaintiff alleges that Flowers approached the door of the Boiler Room, where a civilian "concoct[ed] or other wise [sic] manufactur[ed] false evidence." (Id.) Flowers then ordered Plaintiff to leave. (Id.) Plaintiff appears to contend that he could not leave as directed because Johnson still had Plaintiff's license. (Id.) Plaintiff alleges that Flowers then committed assault and battery "by touching and handling [Plaintiff's] body while placing [him] under arrest with out [sic] Valid [sic] warrant or probable cause." (Id. at 11.) Plaintiff alleges that Alvarez then obtained a "false warrant" by falsely alleging that Plaintiff had remained after having been notified not to enter or remain upon the premises. (Id.) Plaintiff alleges "Officers

-5-

Alvarez, D.M. Harmon, F.T. Wright, and J.M. Chavez conspired to and did fabricate false charges," (id.), and Alvarez and Flowers conspired to unlawfully arrest Plaintiff. (Id.)[5]

This court construes Plaintiff's claim as to this third interaction to allege unconstitutional detention with respect to Johnson, followed by an unconstitutional detention and arrest by other officers - all in violation of the Fourth Amendment. Plaintiff asserts these constitutional claims pursuant to 42 U.S.C. § 1983. (Am. Compl. (Doc. 16) at 4-5.)

## B.  **Procedural History**

Plaintiff, Zared Kinah Jones, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on September 10, 2019. (Doc. 2.) Plaintiff filed an Amended Complaint, (Doc. 16), on December 9, 2019, and named as Defendants the following: the City of Greensboro ("the City"); Wayne Scott, as the Chief of Police; and Greensboro

---

[5] Plaintiff alleges in several instances that actions were directed toward Plaintiff and his "companions." (See Compl. (Doc. 16) at 11.) Plaintiff's allegations with respect to actions taken toward his "companions" may be somewhat relevant to explain the interactions, but Plaintiff has no standing to assert claims on behalf of his "companions" and the allegations of the Amended Complaint are too vague to support a finding as to whether law enforcement's actions directed at the "companions" were proper or improper.

-6-

Police officers S.A. Alvarez, J.M. Chavez, K.R. Johnson[6], F.T. Wright, S.K. Flowers, A.G. Lewis, D.C. Fleming, D.M. Harmon, J.T. Harrill, and M.J. Molson. Defendants Alvarez, Chavez, City of Greensboro, Flowers, Johnson, Scott, and Wright filed a motion to dismiss. (Doc. 22.) Defendants Fleming, Harmon, Harrill, Lewis, and Molson also filed a motion to dismiss. (Doc. 37.) Plaintiff has filed a number of additional documents, including a response, (Doc. 39); an affidavit, (Doc. 40); a second response, (Doc. 43); and a third response with accompanying brief, (Docs. 45, 46).

## II.  <u>**STANDARD OF REVIEW**</u>

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 22 at 1; Doc. 37 at 1.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is

---

[6] Plaintiff identifies an officer as "Jhonson" in the Amended Complaint. (<u>See</u>, <u>e.g.</u>, Doc. 16 at 4, 6, 7.) It appears the correct spelling of that individual's name is "Corporal Korey R. Johnson." (<u>See</u> Doc. 7 at 4.) This court will use the spelling of "Johnson" instead of "Jhonson."

-7-

liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556–57).

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Despite this deferential standard, a court will not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Id.

Pro se plaintiffs are subject to a relaxed pleading standard. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating that pro se complaints must be "liberally construed"); see also Haines v. Kerner, 404 U.S. 519, 520–21 (1972). However, these plaintiffs must still plead facts that fairly put the defendant on notice of the nature of the claims and "contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 & n.5 (4th Cir. 2008) (quoting Twombly, 550 U.S. at 555).

Defendants Alvarez, Chavez, Johnson, Wright, Scott, Flowers, and the City of Greensboro filed their motion seeking dismissal of all claims. (Doc. 22.) Defendants Lewis, Fleming, Harmon, Harrill, and Molson filed a separate motion to dismiss, (Doc. 37), which incorporates and joins in the arguments raised

-8-

by the other Defendants. (See Doc. 38 at 4.) Defendants Lewis, Fleming, Harmon, and Harrill also raise a separate statute of limitations argument. (See id.) This court will first address the arguments that are applicable to all Defendants. The court will then turn to the separate statute of limitations issue.

## III. ANALYSIS

### A. Plaintiff's General Claims

#### 1. Municipal Liability

To prevail on a § 1983 claim, Plaintiff must show that he was deprived of a federal statutory or constitutional right and that deprivation "was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, (1999). Assuming Plaintiff establishes a prima facie case, municipal liability will attach only if the deprivation is also caused by "an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

> Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986).

Case 1:19-cv-00930-WO-JLW   Document 48   Filed 03/02/21   Page 9 of 48

<u>Riddick v. Sch. Bd. of City of Portsmouth</u>, 238 F.3d 518, 523

(4th Cir. 2000). As another district court in this circuit

persuasively explains:

> a municipality is not liable simply because a
> plaintiff "is able to identify conduct attributable to
> the municipality." <u>Riddick</u>, 238 F.3d at 524. Rather,
> "[t]he plaintiff must also demonstrate that, through
> its <u>deliberate</u> conduct, the municipality was the
> 'moving force' behind the injury alleged." [Bd. of
> Cnty. Comm'rs of Bryan Cnty. v.] <u>Brown</u>, 520 U.S.
> [297,] 404 [1997].

<u>Hill v. Robeson Cnty.</u>, 733 F. Supp. 2d 676, 684 (E.D.N.C. 2010).

Specifically, Plaintiff must show that the "municipal decision

reflects deliberate indifference to the risk that a violation of

a particular constitutional or statutory right will follow the

decision." <u>Brown</u>, 520 U.S. at 411. Plaintiff alleges a series of

acts in his Amended Complaint that implicate individual law

enforcement officers. However, his allegations that the

"Officers named have all been trained and had knowledge of the

law," (Am. Compl. (Doc. 16) at 7), or that the City "[f]ailed to

insure proper supervision and discipline of Defendant Officers

in their duties," (<u>id.</u> at 11), are insufficient to plausibly

allege an official policy or custom. These are "'naked

assertion[s]' devoid of 'further factual enhancement,'" and

"[t]hreadbare recitals of the elements of a cause of action,

-10-

supported by mere conclusory statements." <u>Iqbal</u>, 556 U.S. at 678. The City of Greensboro's motion to dismiss will be granted.

### 2. **Supervisory Liability**

Similarly, Plaintiff has failed to state a supervisory liability claim against Defendant Scott as Chief of Police. Scott was not present when the complained-of activity occurred. Instead, Plaintiff alleges Scott "failed in his obligations to control the officers under his authority" and "failed to discipline Officers in accordance with Directives." (Am. Compl. (Doc. 16) at 11.) These allegations are insufficient to plausibly allege liability as to Scott.

"[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates . . . premised upon . . . 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). To establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge

-11-

was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted); see also Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014). To establish the first element of actual or constructive knowledge, "a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, 13 F.3d at 799.

The Amended Complaint is devoid of any allegations that might plausibly establish Police Chief Scott's actual or constructive knowledge that any of these officers were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like Plaintiff. Instead of allegations within the Amended Complaint, Plaintiff has submitted several alleged articles and essays with his brief. (Docs. 39-1 through 39-6.) However, a plaintiff may not amend his complaint through responsive briefing. Hurst v. District of Columbia, 681 F. App'x 186, 194 (4th Cir. 2017).

Even assuming these articles could somehow be incorporated in the Amended Complaint, these articles are insufficient to

-12-

establish knowledge of wrongdoing by either Scott or the City of Greensboro as to constitutional injury. For example, Exhibit A, (Doc. 39-1), and Exhibit E, (Doc. 39-5), describe allegations relating to homeless individuals and concerns over proposed city ordinances, none of which is relevant here. Even if relevant, none of that information plausibly establishes a pattern or practice in 2016, when the events described in the Amended Complaint took place.

Similarly, the Exhibit B, (Doc. 39-2), is an unverified and unidentified article describing alleged police abuse from 1969 to 2018. It is insufficient to plausibly establish the knowledge of wrongdoing necessary to sustain either a supervisory claim against Scott or a claim against the City of Greensboro.

In short, none of the submissions, even if they could be considered by this court as within the scope of the complaint, plausibly support a claim of supervisory liability as to Scott or liability as to the City of Greensboro.

The claims against Scott and the City of Greensboro will be dismissed.

### 3. **Conspiracy Claims**

Plaintiff alleges that "[t]he conspiring to deprive [him] of [his] rights violated Plaintiff Zared Jones' rights and constituted conspiracy to deprive [him] of [his] rights a

-13-

violation under (34 U.S.C. § 12601)," (Am. Compl. (Doc. 16) at 5), and that various officers "conspired" to fabricate false charges and unlawfully arrest him, (id. at 11).

> 34 U.S.C. § 12601 . . . prohibits certain agencies from "[e]ngaging in an unlawful pattern or practice . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). However, the statute does not create a private cause of action. See id. Instead, the statute only provides that the Attorney General "may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice." 34 U.S.C. § 12601(b).

Graham v. Sec'y of the Army, No. 5:17-CV-502-FL, 2018 WL 4623646, at *3 (E.D.N.C. Sept. 26, 2018). Plaintiff's conclusory allegation that Defendants' actions were a violation of 34 U.S.C. § 12601 fails to state a claim.

With respect to Plaintiff's allegations of conspiracy, the Fourth Circuit first applied the intracorporate conspiracy doctrine to civil rights claims in Buschi v. Kirven, 775 F.2d 1240, 1251-53 (4th Cir. 1985). The intracorporate conspiracy doctrine recognizes that a corporation cannot conspire with itself, and the acts of the agent are the acts of the corporation. Id. at 1251.

All of the remaining defendants are employees of the Greensboro Police Department, (Am. Compl. (Doc. 16) at 6), and all of the actions alleged occurred within the scope of their

-14-

employment as law enforcement officers, (see generally Am.
Compl. (Doc. 16).) Plaintiff has not alleged that the actions
were outside the scope of their employment as might meet an
exception to the doctrine. See Dowdy v. Pamunkey Reg'l Jail
Auth., Civil Action No. 3:14-cv-003-JAG, 2014 WL 2002227, at *10
(E.D. Va. May 15, 2014) ("The Amended Complaint . . . alleges
only shortcomings and omissions in those employees' performance
of their duties — not that they involved themselves in
extracurricular, unauthorized activities."). In applying the
intracorporate conspiracy doctrine involving law enforcement
officers, another district court in this circuit persuasively
explains:

> plaintiff's claim fails under the intracorporate
> conspiracy doctrine because Officers Ojeda and Jones
> are agents of a single entity, namely the Leesburg
> Police Department, and thus cannot legally conspire
> with one another. See Buschi v. Kirven, 775 F.2d 1240,
> 1252–53 (4th Cir. 1985); see also Locus v.
> Fayetteville State University, 870 F.2d 655 (Table),
> 1989 WL 21442 (4th Cir. March 8, 1989) (unpublished
> disposition).

Veney v. Ojeda, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004). This
court finds Plaintiff has failed to state a claim of conspiracy
to violate his constitutional rights under § 1983.

-15-

B.    **First Interaction with Law Enforcement**

1.    **Statute of Limitations**

Defendants argue that the applicable statute of limitations has run as to the first interaction between Plaintiff and Defendants, which occurred in downtown Greensboro around 10:30 p.m. on September 9, 2016. (Am. Compl. (Doc. 16) at 7.) While Defendants make a relatively strong argument that may be borne out following discovery, after drawing all reasonable inferences in favor of Plaintiff, this court finds factual issues preclude dismissal on the basis of the statute of limitations. The facts do not support a finding as to the date and time of the first interaction between Plaintiff and Defendants at this stage of the proceedings.

This court disagrees with Defendants' assertion that "[t]he Amended Complaint specifically alleges that the events in Paragraph 1 took place 'around 10:30 pm.'" (Doc. 23 at 12.) Instead, the Complaint alleges Plaintiff "arrived on [S]outh Elm Street . . . in downtown [G]reensboro around 10:30 pm with three companions." (Am. Compl. (Doc. 16) at 7.) For purposes of this motion, this court finds Plaintiff arrived in downtown Greensboro at 10:30 p.m. – however, the Amended Complaint does not provide sufficient facts to determine whether the initial

-16-

encounter between Plaintiff and Defendants took place on September 9 or September 10.

Defendants point out that the original complaint states that the date and time the events took place was "09/10/2016 around 12:30 AM." (Doc. 2 at 5.) While there may be a dispute over the actual time of the relevant events, this court finds an issue of fact exists as to whether the first alleged seizure took place on September 9 or September 10, 2016. Defendants' motion to dismiss the claims arising from the first encounter based upon the applicable statute of limitations is predicated upon a factual finding that the initial interaction took place on September 9, 2016. That may ultimately prove to be true, but this court cannot find, at this point in the proceedings, whether the initial interaction took place on September 9 or 10. The motion will be denied.

## 2. Bystander Liability

Plaintiff also asserts a claim alleging that Defendants "failed to intervene and protect [him] from constitutional violations by fellow officers." (Am. Compl. (Doc. 16) at 11.) This court construes the Amended Complaint to allege a § 1983 bystander liability claim.

The Fourth Circuit has adopted the following standard in determining whether bystanding officers are required to act:

-17-

an officer may be liable under § 1983, on a theory of
bystander liability, if he: (1) knows that a fellow
officer is violating an individual's constitutional
rights; (2) has a reasonable opportunity to prevent
the harm; and (3) chooses not to act.

Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir.
2002) (footnote omitted).

This court has found that Plaintiff's claim as to an
unconstitutional detention in his initial confrontation with law
enforcement should not be dismissed on statute of limitations
grounds, and Defendants Alvarez, Chavez, Johnson, F.T. Wright,
Flowers, Lewis, Fleming, Harmon, Harrill, and Molson do not
challenge the substantive claim on the merits. These officers
are all part of the alleged unconstitutional detention as
described by Plaintiff. (Am. Compl. (Doc. 16) at 7 ("officers .
. . [s]urrounded my companions and I. By doing so they did by
show of authority block my free passage . . . . Officers . . .
did by show of authority surrounded me and demanded personal and
[p]rivate answers/information.").) It is premature to attempt to
determine, as a factual matter, which officers may have
conducted the detention, which officers may have been merely
bystanders, whether reasonable suspicion existed, or whether any
detention was in fact unconstitutional. Plaintiff has alleged
facts, presently unchallenged, that the officers violated his
constitutional rights by detaining Plaintiff, that all officers

-18-

had a reasonable opportunity to prevent the harm, and that any bystanding officers did not act. The motion to dismiss the bystander claim will therefore be denied as to a claim of an unlawful detention.

## C. <u>Second Interaction with Law Enforcement</u>

Defendants argue Plaintiff's allegations of "unwarranted surveillance" do not state a constitutional claim. Defendants argue any surveillance did not amount to a seizure, <u>see California v. Hodari D.</u>, 499 U.S. 621 (1991), and there was no search because "police may see what may be seen 'from a public vantage point where they have a right to be,'" <u>see Florida v. Riley</u>, 488 U.S. 445, 449 (1989) (quoting <u>California v.</u> Ciraolo, 476 U.S. 207, 213 (1986)). (Doc. 23 at 15-16.) This court agrees.

The Fourth Amendment only prohibits unreasonable searches and seizures. <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 108-09 (1977). "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967). "[N]o Fourth Amendment search occurs if a police officer makes observations while in a public place or open field, even if the objects he observes lie within an area protected by the Fourth Amendment. <u>Reeves v. Churchich</u>, 484 F.3d 1244, 1254 (10th Cir. 2007).

-19-

Plaintiff's claim of "unwarranted surveillance" fails to allege the violation of any constitutional right. Because none of Plaintiff's rights were implicated by law enforcement officers following and watching him on a public street, this claim will be dismissed.

D.    **Third Interaction with Law Enforcement**

1.    **Qualified Immunity for Johnson's Seizure of the License**

Defendants argue Johnson is entitled to qualified immunity as to the third interaction with law enforcement. Plaintiff complained about an assault, and Johnson agreed to investigate. As part of that investigation, Johnson took Plaintiff's driver's license. This court finds Plaintiff has failed to allege an unconstitutional action by Johnson, but in the alternative, this court agrees Defendant Johnson is entitled to qualified immunity.

Plaintiff alleges he was unconstitutionally seized when Johnson took the license and refused to return it. However, this interaction began as a consensual police encounter: Plaintiff sought Johnson's assistance with reporting an assault. (See Am. Compl. (Doc. 16) at 10 ("I approached Defendant Cpl. S.K. Johnson. I pleaded for help after my assault. . . . After denying several requests for help Defendant agreed to adhere to

-20-

established policy and began an investigation.").) As part of the interaction, Johnson requested Plaintiff's license. (Id.) Plaintiff alleges that he requested return of the license, thereby revoking his consent. However, Plaintiff's conclusory allegation that the driver's license was "no longer needed making the seizure unnecessary," (id.), is an unsupported conclusion, for which no deference is required. Plaintiff requested police assistance; absent some allegation of fact, he cannot turn the act of assistance into an unconstitutional detention.

Even assuming that Johnson did improperly detain Plaintiff, qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a government official is entitled to qualified immunity, this court must determine both whether (1) there was a violation of a person's constitutional right and (2) whether the right was "clearly established," such that a reasonable officer would know his conduct was unlawful. Saucier v. Katz, 533 U.S. 194, 202 (2001). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and

"protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

In <u>Saucier</u>, the Supreme Court required that courts first analyze the threshold question of whether a constitutional right had been violated before turning to the question of whether the right was "clearly established." <u>Saucier</u>, 533 U.S. at 201. Since then, the Supreme Court has loosened the strict sequential analysis of <u>Saucier</u>, allowing courts to exercise discretion in which analysis to take up first. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009). However, even as it receded from <u>Saucier</u>, the <u>Pearson</u> Court recognized the benefits of first determining whether a constitutional violation occurred before turning to whether the right was clearly established, since it "often may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be." <u>Pearson</u>, 555 U.S. at 236 (internal quotation marks omitted).

This court finds the allegations are insufficient to establish that a constitutional violation occurred. Plaintiff acknowledges that Johnson "requested [his] Drivers License to retrieve necessary information." (Am. Compl. (Doc. 16) at 10.) Plaintiff offers no facts as to how long Johnson held his

-22-

driver's license, what he was doing with the license, or facts supporting the allegation that Johnson held the license for an unconstitutionally long period of time. Plaintiff must plead facts that fairly put Defendant on notice of the nature of the claims and "contain more than labels and conclusions." Giarratano, 521 F.3d at 304 & n.5 (quoting Twombly, 550 U.S. at 555). Although Plaintiff claims, in a conclusory fashion, that Johnson's retention of the driver's license was "no longer needed making the seizure unnecessary," Plaintiff offers no facts to support this conclusion. Plaintiff fails to explain how or why the interaction should have ended simply because he may have desired such a result, nor does Plaintiff allege any specific duration of time that might explain why the detention was unconstitutional. This court finds Plaintiff has failed to plausibly allege an unconstitutional detention as opposed to a voluntary interaction. "[T]he law ordinarily permits police to seek the voluntary cooperation of members of the public in the investigation of a crime." Illinois v. Lidster, 540 U.S. 419, 425 (2004). Because Plaintiff has failed to plausibly allege a constitutional violation, qualified immunity applies as to any detention of Plaintiff resulting from Johnson's continued possession of the driver's license.

-23-

Even assuming Plaintiff plausibly alleges a detention, the officer is still entitled to qualified immunity in the second prong of analysis. In determining whether a right was "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The Fourth Amendment applies "whenever a police officer accosts an individual and restrains his freedom to walk away." Terry v. Ohio, 392 U.S. 1, 16 (1968). The Fourth Amendment prohibition against unreasonable seizures includes "brief investigatory stops." United States v. Kehoe, 893 F.3d 232, 237 (4th Cir. 2018), cert. denied, ____ U.S. ____, 139 S. Ct. 842 (2019). However, the facts alleged by Plaintiff do not fit into the traditional reasonable suspicion analysis, as the alleged interaction between Johnson and Plaintiff began when Plaintiff "approached Defendant Cpl. S.K. Johnson" and "pleaded for help". (Am. Compl. (Doc. 16) at 10.) Plaintiff contends that the resulting seizure, (id.) ("ordering me to move and remain in one spot against my will, without a warrant or probable cause"), was unconstitutional.

-24-

## 2. Qualified Immunity for Johnson's Alleged Detention of Plaintiff

Plaintiff's claim of an unconstitutional detention, as alleged, implicates the authority of law enforcement to detain an individual complaining of criminal activity rather than one suspected of criminal activity. (See e.g., Am. Compl. (Doc. 16) at 7 ("with tears in my eyes I [d]esperately [p]leaded for help as I was just assaulted and brutalized").) Assuming Plaintiff's interaction with law enforcement did in fact move from a voluntary act to a detention by Johnson, it was "less intrusive than a traditional arrest." Brown v. Texas, 443 U.S. 47, 50 (1979).

> Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.

Id. at 50-51 (internal citations omitted). Applying these factors to determine the reasonableness of Johnson's alleged detention, this court finds Plaintiff's allegations establish the reasonableness of Johnson's actions. See e.g., Lidster, 540 U.S. at 427. Plaintiff's interaction with Johnson did not involve an arbitrary invasion by an officer in the field; Plaintiff sought intervention by law enforcement.

-25-

With respect to the first factor, the relevant public concern was substantial. Plaintiff claimed to have been the victim of a brutal assault in the Boiler Room. As to the second factor, Johnson's detention of Plaintiff advanced the public interest. The detention permitted Johnson to investigate the allegations by first identifying Plaintiff. (Am. Compl. (Doc. 16) at 10) ("Defendant requested [his] Drivers License to retrieve necessary information.").) As to the third factor, accepting Plaintiff's allegations as true that he was detained and commanded to remain in a specified spot, Plaintiff fails to plausibly allege Johnson's actions amounted to anything other than a minimal interference with his liberty.

This court therefore finds, first, that Plaintiff has failed to plausibly allege he was involuntarily detained by Johnson. Even assuming Johnson detained Defendant by retaining his driver's license and requiring Defendant to remain in a particular spot, that detention has not been plausibly alleged by Plaintiff to be unconstitutional. Second, even assuming that an unconstitutional detention took place, this court finds there is no clearly established right that would make it clear to a law enforcement officer how long Johnson could detain Plaintiff or retain his driver's license while the investigation Plaintiff requested was ongoing.

This court finds Johnson is entitled to qualified immunity, and this claim as to Johnson will be dismissed.

## E.   Third Interaction with Law Enforcement

### 1.   Unconstitutional Arrest

Defendants argue that Plaintiff's unconstitutional arrest claim is subject to dismissal. Plaintiff appears to allege that an arrest occurred by Flowers "touching and handling [Plaintiff's] body while placing [him] under arrest, without Valid warrant, or probable cause, or notifying [him] of Miranda rights."[7] (Am. Compl. (Doc. 16) at 11.) Plaintiff alleges a false warrant was issued, which claimed that Plaintiff remained on the premises of the Boiler Room after being told not to by a person in charge of the premises. (Id.)

---

[7] This court agrees with Defendants that Plaintiff has not stated a claim for failure to provide Miranda rights. (Doc. 23 at 22 ("When an allegedly coercive interrogation occurs but the fruits of that interrogation are never admitted in court, there is no Fifth Amendment violation, and therefore, no viable § 1983 claim. Burrell v. Virginia, 395 F.3d 508, 513-14 (4th Cir. 2005) (citing Chavez v. Martinez, 538 U.S. 760 (2003)).").

Relying upon the actual warrants,[8] (Doc. 12-1 at 2-3),
Defendants argue Plaintiff was in fact arrested for two
offenses. One of those offenses is the aforementioned trespass,
alleged by Plaintiff to have been false. A second offense was
also charged in the warrant, a violation of N.C. Gen. Stat.
14-444: appearing intoxicated in a public place and acting in a
disruptive manner (hereinafter referred to as "public
intoxication"). The second offense is not addressed by Plaintiff
in the Amended Complaint. (See Doc. 23 at 20-22; Doc. 12-1 at
2-3.)

This court finds, first, that it may consider the warrant
as filed by Defendants without converting the motion to dismiss
to a motion for summary judgment. A court dealing with a motion
to dismiss may only consider "public records, documents central
to plaintiff's claim, and documents sufficiently referred to in
the complaint"; even with those types of materials, a court may
only consider them "so long as the authenticity of these

_____

[8] Defendants originally filed a copy of the warrants with
their original brief. (Doc. 12-1.) Though Defendants did not
file them again as exhibits, Defendants reference and discuss
the warrants in their subsequent brief with this court. (Doc. 23
at 4.) Plaintiffs have not raised any objection to the
authenticity or accuracy of the documents, and this court will
therefore utilize the warrants as originally filed in its
analysis.

documents is not disputed." Stewart v. Johnson, 125 F. Supp. 3d
554, 558 (M.D.N.C. 2015) (quoting Witthohn v. Fed. Ins. Co., 164
F. App'x 395, 396 (4th Cir. 2006) (per curiam)); see also Gasner
v. Cnty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995)
(noting that the use of such materials has "but one limitation:
the document must be of unquestioned authenticity"). Plaintiff
does not question the authenticity of the warrant as submitted.
This court will therefore consider the warrant without
converting the motion to one for summary judgment.

Defendants contend that since Plaintiff has not challenged
or made any allegation of irregularity as to the public
intoxication offense specifically, (see generally Am. Compl.
(Doc. 16)), this court can find that offense sufficient to
require dismissal of Plaintiff's unconstitutional arrest claim.
In response, Plaintiff argues that he "did state in 12 of claims
that the warrant sworn out by Defendant S.A. Alvarez was false,
which means Plaintiff is alleging that all charges held within
the Warrant where [sic] false which included Intoxication and
Disruptive in public and trespassing charges." (Doc. 39 at 14-
15.)

This court disagrees with Plaintiff. After careful review,
this court finds Plaintiff has not alleged in the Amended
Complaint any facts which specifically address the public

-29-

intoxication offense. Because a plaintiff may not amend his complaint through responsive briefing, Hurst, 681 F. App'x at 194, this court declines to find Plaintiff has alleged the public intoxication offense was "false." Nevertheless, for the reasons explained hereafter, this court is constrained to find the allegations of the Amended Complaint are sufficient to require that Defendants' motion be denied as to this issue. While discovery and the presentation of evidence may prove matters entirely different from Plaintiff's allegations, the face of the warrant and the dispute over the information that contributed to it preclude dismissal at this stage.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "An arrest is a seizure of the person." Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003) (quoting Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001)). "'[T]he general rule [is] that Fourth Amendment seizures are "reasonable" only if based on probable cause' to believe that the individual has committed a crime." Bailey v. United States, 568 U.S. 186, 192 (2013) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). Warrantless arrests are "reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

With respect to § 1983 claims based on arrests without probable cause, "[w]here . . . an arrest is based on probable cause, it cannot result in a constitutional violation. And in the absence of a constitutional violation, qualified immunity applies and the court need not address whether the constitutional right in question was clearly established." Cranford v. Kluttz, 278 F. Supp. 3d 848, 873 (M.D.N.C. 2017) (quoting Swick v. Wilde, No. 1:10-cv-303, 2012 WL 3780350, at *9 (M.D.N.C. Aug. 31, 2012)); see also Durham v. Horner, 690 F.3d 183, 190 (4th Cir. 2012) (finding probable cause for the arrest and thus no "essential constitutional violation underlying 1983 claim"); Sowers v. City of Charlotte, No. 3:14-cv-523-RJC-DCK, 2015 WL 8491498, at *4 (W.D.N.C. Dec. 9, 2015) ("Because the officers had probable cause, Plaintiff's arrest was valid, and there was no violation of his constitutional rights. There is accordingly no basis for a finding of any liability on the part of the defendant officers under federal or state law.").

The critical inquiry is whether the facts establish probable cause for the arrest. "Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." Cahaly

v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015) (quoting Michigan
v. DeFillippo, 443 U.S. 31, 37 (1979) (internal quotation marks
omitted)). Probable cause requires an evaluation of the "facts
and circumstances within the officer's knowledge" and permits
the drawing of reasonable inferences from those facts and
circumstances. United States v. Humphries, 372 F.3d 653, 657–58
(4th Cir. 2004).

Warrants for arrest must also be supported by probable
cause. U.S. Const. amend. IV. Of course, "obtaining an arrest
warrant does not provide per se evidence" that the warrant was
proper or that the officer was objectively reasonable in
believing it so. Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th
Cir. 1991).

> A party challenging the veracity of a warrant
> application must show that the officer(s) deliberately
> or with a "reckless disregard for the truth" made
> material false statements in the warrant application,
> or omitted from that application "material facts with
> the intent to make, or with reckless disregard of
> whether they thereby made, the [application]
> misleading."

Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546,
556 (4th Cir. 2017) (quoting Franks v. Delaware, 438 U.S. 154,
171 (1978), and United States v. Colkley, 899 F.2d 297, 300 (4th
Cir. 1990)). A plaintiff may demonstrate reckless disregard by
submitting evidence of an "officer acting 'with a high degree of

-32-

awareness of [a statement's] probable falsity,' meaning that 'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Id. (quoting Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007)). Nevertheless, "[r]easonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." Wadkins v. Arnold, 214 F.3d 535, 541 (4th Cir. 2000) (citation omitted).

Moreover, a plaintiff must demonstrate that the false statement or omission is material, 'that is, necessary to the [neutral and disinterested magistrate's] finding of probable cause.'" Humbert, 866 F.3d at 556 (quoting Miller, 475 F.3d at 628). When determining whether the false statement is material, this court is required to "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Miller, 475 F.3d at 628 (internal quotations marks and citation omitted).

In North Carolina, under N.C. Gen. Stat. § 15A-304(d), "[a] judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported by oath or

affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it."

Defendants argue that because the arrest and detention of Plaintiff was a single incident and at least one of the offenses has not been alleged to lack probable cause, Plaintiff's Fourth Amendment claim must fail. (See Doc. 23 at 21.) This court agrees with Defendants that the existence of probable cause as to the public intoxication offense likely vitiates a claim of an unconstitutional arrest for the reasons explained in Linn v. Garcia, 531 F.2d 855, 862 (8th Cir. 1976), and Mills v. Hassan, Civil Action No. GLR-18-562, 2019 WL 7049567 (D. Md. Dec. 23, 2019). (See Doc. 23 at 21.) However, as explained above, the central issue is not whether Plaintiff was guilty or not guilty, but whether probable cause existed. In conducting that analysis, if, as here, a plaintiff alleges the inclusion of false information as to probable cause, it is necessary to excise that false information and determine whether the remaining information is sufficient to establish probable cause. See Miller, 475 F.3d at 627.

It is not clear upon what information the officers and the Magistrate may have relied in determining probable cause for the public intoxication offense from the face of the warrant. More

-34-

specifically, it is not clear from the warrant how any false statements, as alleged in the Amended Complaint as to the trespassing offense, might have affected the finding of probable cause by the Magistrate as to the public intoxication offense. Therefore, factual issues exist requiring that these issues be resolved at summary judgment or trial rather than this stage of the proceedings.

Plaintiff details the alleged falsity of the information describing the trespassing offense. (Am. Compl. (Doc. 16) at 10.) The warrant itself does not explain the facts clearly enough for this court to determine what facts constituted probable cause as to which offense, in light of Plaintiff's allegations as to those false statements alleged.

N.C. Gen. Stat. § 14-444 makes it unlawful for any person in a public place to be intoxicated and disruptive, with disruptive specifically defined as "otherwise preventing or interfering with access to or passage across a sidewalk . . ." N.C. Gen. Stat. § 14-444(a)(2). "Intoxicated" is defined as "the condition of a person whose mental or physical functioning is presently substantially impaired as a result of the use of alcohol." N.C. Gen. Stat. § 14-443(2). "[M]ere public intoxication standing alone [is] no longer to be considered unlawful and further, that for there to be a chargeable offense,

-35-

the intoxicated person must be disruptive in one or more of the ways described in G.S. 14-444(a), subsection (1) through (5)." State v. Cooke, 49 N.C. App. 384, 390, 271 S.E.2d 561, 565 (1980).

Although the warrant makes clear that Plaintiff was disruptive in that he "did interfere with passage across a sidewalk," it is not clear from the warrant what relationship, if any, exists between the facts known to the officers and later provided to the Magistrate as to the trespassing offense and the public intoxication offense. It is not clear whether those facts are separate and independent of each other. For example, it is not clear whether the sidewalk upon which Plaintiff interfered with passage was part of the Boiler Room property. Nor can the court determine from the facts alleged and presented whether the officers and the Magistrate relied upon Plaintiff's conduct in refusing to leave the Boiler Room in support of a finding of probable cause to believe Plaintiff was intoxicated.

At this stage of the proceedings, this court is required to accept the complaint's factual allegations as true, Iqbal, 556 U.S. at 678, and "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C.

2004) (citation omitted). Thus, although Plaintiff has not at this stage specifically challenged the truth or accuracy of the public intoxication offense by allegations in the Amended Complaint, Plaintiff has alleged that certain facts contained in the warrant and attributed to the officers were false. Because Plaintiff has alleged the use of false statements in relation to obtaining the warrant, the record at this stage is insufficient to establish the facts supporting probable cause as to either offense – as those facts which might support a finding of probable cause by the officers and the Magistrate are not before the court. As a result, this court cannot determine, as a matter of law, whether probable cause existed for the public intoxication offense that is entirely separate from the allegedly false statements. See Miller, 475 F.3d at 627.

This court therefore finds that the motion to dismiss will be denied as to Plaintiff's claim of an unconstitutional arrest, but only as to Alvarez and Flowers. Plaintiff alleges specifically that Flowers touched and handled him "while placing [Plaintiff] under arrest, without valid warrant or probable cause." (Am. Compl. (Doc. 16) at 11.) Plaintiff further alleges Flowers "transferred custody . . . to Alvarez" and that Alvarez "falsely swore and . . . alleg[ing] under oath" as to the trespassing charge. (Id.) Plaintiff's allegations as to the

remaining officers, including Johnson, are neither clear nor supported by facts sufficient to plausibly allege their participation in an unconstitutional arrest. Any claims as to those officers as to an unconstitutional arrest will be dismissed.

### 2. **Bystander Liability**

With respect to the alleged unconstitutional arrest, this court has found Plaintiff has stated a claim as to Alvarez and Flowers, the officers participating in the arrest itself. As to the remaining Defendants, Plaintiff fails to allege facts from which it may be plausibly inferred that other officers (1) had specific knowledge of any other officers' alleged unconstitutional conduct and (2) could have had a reasonable opportunity to prevent the same. See Everette v. White, No. 4:14-CV-34-FL, 2015 WL 847194, at *6 (E.D.N.C. Jan. 16, 2015). As to this claim, Plaintiff has failed to allege facts which establish a claim under a theory of bystander liability as to Plaintiff's arrest. The motion to dismiss will be granted as to this theory.

### F. **Motion to Dismiss Amended Complaint Defendants**

Defendants Lewis, Fleming, Harmon, Harrill, and Molson were not named in the original complaint filed on September 10, 2019. (Doc. 2.) Instead, these Defendants (hereinafter "Am. Compl.

-38-

Defendants") were not named until the filing of the Amended Complaint. (Am. Compl. (Doc. 16).) The Am. Compl. Defendants contend that they did not have notice of the original complaint and the allegations as to the Am. Compl. Defendants do not relate back to the filing of the original Complaint. (See Doc. 38 at 5-9.)

The statute of limitations for claims brought pursuant to § 1983 in North Carolina is three years. Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991). Plaintiff's claims arose on September 9 or 10, 2016; the statute of limitations therefore ran on September 9 or 10, 2019. Plaintiff filed his original complaint in this court on September 10, 2019. (Doc. 2.) Plaintiff filed the Amended Complaint in this court in December 2019, adding the additional Am. Compl. Defendants. (Am. Compl. (Doc. 16).) Because December 2019 falls outside the applicable statute of limitations, this court must determine whether the claims against the Am. Compl. Defendants relates back to the filing of the original complaint on September 10, 2019.

The actual date of the filing of the Amended Complaint in a form sufficient to provide public notice is complex. When a document is actually entered on the public record in CM/ECF, the document is file-stamped, while a receipt is also generated as

-39-

to the filing. That receipt is accessible by clicking on the silver dot next to the document number. The hand stamp on the Amended Complaint reflects that Plaintiff delivered it to the Clerk on December 9, 2019, around 4:00 p.m. or perhaps slightly later. (See Am. Compl. (Doc. 16) at 1.) That date is the official file date. However, the Clerk did not enter the Amended Complaint on the public docket until 12/12/2019 at 1:04 p.m. (See Receipt (Doc. 16).) Under these circumstances, although the Amended Complaint is deemed filed on December 9, 2019, none of the parties received actual notice of the Amended Complaint until on or after December 12, 2019, more than 90 days from the date of the original complaint. Plaintiff, in response to the Am. Compl. Defendants' motion, has not provided any evidence or information to suggest he provided actual notice of the Amended Complaint to anyone prior to December 12, 2019. (See Docs. 40, 43.) Service of the Am. Compl. Defendants was not effected until January 13, 2020, and February 6, 2020. (Docs. 25-28, 30.)

Fed. R. Civ. P. 15 describes the circumstances under which an amendment may relate back to the original pleading, in this case the complaint:

(c)   Relation Back of Amendments.

(1)   When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

-40-

(A)   the law that provides the applicable
statute of limitations allows relation back;

(B)   the amendment asserts a claim or
defense that arose out of the conduct, transaction, or
occurrence set out - or attempted to be set out - in
the original pleading; or

(C)   the amendment changes the party or the
naming of the party against whom a claim is asserted,
if Rule 15(c)(1)(B) is satisfied and if, within the
period provided by Rule 4(m) for serving the summons
and complaint, the party to be brought in by
amendment:

(i)   received such notice of the action
that it will not be prejudiced in defending on the
merits; and

(ii) knew or should have known that the
action would have been brought against it, but for a
mistake concerning the proper party's identity.[9]

Fed. R. Civ. P. 15(c)(1)(A)-(C). Rule 15(c) "mandates relation

back once the Rule's requirements are satisfied; it does not

leave the decision whether to grant relation back to the

district court's equitable discretion. See Rule 15(c)(1) ('An

amendment . . . relates back . . . when' the three listed

requirements are met (emphasis added))." Krupski v. Costa

Crociere S. p. A., 560 U.S. 538, 553 (2010). The Fourth Circuit

---

[9] This court has included Rule 15(c)(1)(C)(ii) to recite the
applicable rule in full, but there is no argument or basis to
conclude that Plaintiff made a mistake concerning the proper
party's identity within the meaning of Rule 15(c)(1)(C)(ii). The
focus of this analysis is upon Rule 15(c)(1)(C)(i).

-41-

has confirmed that the language in Rule 15(c) allows the addition of a party to a complaint as an appropriate "change" under the Rule. Goodman v. Praxair, Inc., 494 F.3d 458, 469 (4th Cir. 2007). The Fourth Circuit has explained Rule 15(c) as to adding a defendant:

> When an amendment seeks to add a defendant, the focus turns to the notice to that individual or entity. Specifically, as to Rule 15(c)(1)(C)(ii), the Supreme Court has clarified, "The question . . . is not whether [the amending party] knew or should have known the identity of . . . the proper defendant, but whether [the potential defendant] knew or should have known that it would have been named as a defendant but for an error." Krupski v. Costa Crociere, 560 U.S. 538, 548, 130 S. Ct. 2485, 177 L.Ed.2d 48 (2010).

Wilkins v. Montgomery, 751 F.3d 214, 224 (4th Cir. 2014).

Am. Compl. Defendants contend that they did not receive notice of this action within the time provided by Fed. R. Civ. P. 15(c).

Rule 15(c) requires notice within the time provided by Fed. R. Civ. P. 4(m). Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010) ("The 'limitation period' for purposes of analyzing whether the newly added defendant received notice and should have had knowledge of the action is the Federal Rule of Civil Procedure 4(m) service period."). The time provided by Rule 4(m) is within 90 days after the complaint is filed, unless the court extends the time for good cause. Fed. R. Civ. P. 4(m) (amended

from 120 days to 90 days in 2015). The time for serving the complaint was not extended, nor has Plaintiff demonstrated or argued good cause exists to extend the time for service. Because the original complaint was filed on September 10, 2019, notice to the Am. Compl. Defendants had to occur on or before December 10, 2019. As noted above, the Amended Complaint was not filed publicly or served until December 12, 2019, more than 90 days from the date of the filing of the original complaint.

Am. Compl. Defendants did not receive formal, actual notice by way of service of process until January 13, 2020 and February 6, 2020. (Docs. 25-28, 30.) On the record before this court, the earliest possible date this court could conceivably find the Am. Compl. Defendants might have received some type of notice within the meaning of Rule 15 is December 12, 2019, the date the Amended Complaint was publicly filed. Plaintiff has not come forward with any evidence or information to suggest he mailed or otherwise disclosed the Amended Complaint prior to or after hand-delivery to the Clerk for filing. On the record before this court, Plaintiff presents no facts to permit a finding that "within the period provided by Rule 4(m) . . . the party to be brought in by amendment received such notice of the action" or "knew or should have known the action would have been brought against it." Fed. R. Civ. P. 15(c)(1)(C)(i) and (ii).

There is authority which permits a court to presume notice within the prescribed time period "when the nature of the claim is apparent in the initial pleading and the added defendant has . . . a sufficient identity of interest with the original defendant . . . ." Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989). Am. Compl. Defendants do not share counsel with the original defendants. See Boatwright v. Good, No. 1:02CV209-C, 2003 WL 22231194, at *2 (W.D.N.C. Aug. 6, 2003). Am. Compl. Defendants are not alleged to be supervisors or to somehow share in an administrative hierarchy or identity of interest with the previously named defendants. See Stokes v. Harris, No. 10CV935, 2013 WL 1212788, at *7 (M.D.N.C. Mar. 25, 2013).

On this record, the court concludes that the Am. Compl. Defendants "'received no notice of the action' . . . within the [90-day] period set forth in Rule 4(m) and were thus 'prejudiced in defending the claim on the merits.'" Wilkins, 751 F.3d at 226 (quoting Fed. R. Civ. P. 15(c)(1)(C)(i)).

This court has considered whether, on its own motion, it should toll the 90-day service period to avoid penalizing Plaintiff for delay caused by the Clerk in entering Plaintiff's Amended Complaint in CM/ECF, and thereby on the public record, as any delay by the Clerk is beyond the control of a pro se

-44-

plaintiff. See e.g. Robinson, 602 F.3d at 608. For two reasons, this court declines to take this action.

First, Plaintiff's delay in acting to file the Amended Complaint is not explained, nor is there any reason to find from this record that a public filing of the Amended Complaint on December 9, 2019 - or even an extension of the 90-day period to December 12, 2019 - would provide a basis upon which to find notice to Am. Compl. Defendants within the time provided by Rule 4(m). It does not appear the delay by the Clerk affected the analysis in any fashion, and at best, Plaintiff's delay in waiting until the last day to file timely is the primary cause of the absence of any timely notice to the Am. Compl. Defendants.

Second, Plaintiff is proceeding pro se, and "the Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs. This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff appears pro se." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (citing Canty v. City of Richmond, 383 F. Supp. 1396, 1399 (E.D. Va. 1974)). However, "[t]he 'special judicial solicitude' with which a district court should view such pro se complaints does not

-45-

transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). Plaintiff has failed to fairly present any facts or questions with respect to the timeliness of his Amended Complaint as to the Am. Compl. Defendants, and this court will not speculate as to these matters. This court is not an advocate for a pro se plaintiff or any other party.

IV. **CONCLUSION**

For the reasons explained herein,

**IT IS HEREBY ORDERED** that the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants S.A. Alvarez, J.M. Chavez, K.R. Johnson, F.T. Wright, Wayne Scott, S.K. Flowers, and the City of Greensboro, (Doc. 22), is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** as to Defendants Wayne Scott and the City of Greensboro, and all claims as to those two Defendants will be dismissed.

The motion to dismiss is **DENIED** as to the initial claim of unconstitutional detention by Defendants S.A. Alvarez, J.M. Chavez, K.R. Johnson, F.T. Wright, and S.K. Flowers. The motion to dismiss is **DENIED** as to the bystander liability claim regarding the initial detention.

-46-

The motion to dismiss is **DENIED** as to Plaintiff's claim of unlawful arrest at the Boiler Room as to Defendants Flowers and Alvarez.

The motion to dismiss is **GRANTED** as to all remaining claims, including conspiracy and bystander liability. The motion to dismiss is **GRANTED** as to Plaintiff's claim of unconstitutional detention by Defendant K.R. Johnson.

Three claims remain for resolution at summary judgment or trial. The first is a claim under 42 U.S.C. § 1983 based upon allegations of unconstitutional detention by Defendants S.A. Alvarez, J.M. Chavez, K.R. Johnson, F.T. Wright, and S.K. Flowers. The second is the related claim as to bystander liability. The third is the claim under 42 U.S.C. § 1983 based upon allegations of an unconstitutional arrest by Defendants S.A. Alvarez and S.K. Flowers.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Plaintiff's Amended Complaint brought by Defendants D.C. Fleming, D.M. Harmon, J.T. Harrill, A.G. Lewis, and M.J. Molson, (Doc. 37), is **GRANTED** and that all claims as to these Defendants are dismissed with prejudice.

**IT IS FURTHER ORDERED** that the court finds any claims against a defendant identified as "S.K. Wright" are dismissed

-47-

without prejudice for failure to effect service of process as required by Fed. R. Civ. P. 4(m).

IT IS FURTHER ORDERED that Plaintiff's Motion for Extension of Time to Respond, (Doc. 44), is DENIED.

This the 2nd day of March, 2021.

_____
United States District Judge