IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ZARED KINAH JONES,                    )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )          1:19CV930
                                      )
S.A. ALVAREZ, J.M. CHAVEZ,            )
K.R. JOHNSON, F.T. WRIGHT,            )
and S.K. FLOWERS,                     )
                                      )
          Defendants.                 )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

     Before this court is a Motion for Summary Judgment filed by

Defendants S.A. Alvarez, J.M. Chavez, K.R. Johnson, F.T. Wright,

and S.K. Flowers. (Doc. 71.) Plaintiff Zared Kinah Jones filed a

"Motion for Extension of Time to Submit Plaintiff's Responses to

Defense's Interrogatories and Admissions; to Defense,"

(Doc. 76), a brief in support of that motion, (Doc. 77), and

responses to Defendants' discovery requests, (Doc. 77-1).

Defendants have filed a Motion for Sanctions for Plaintiff's

failure to comply with the court's discovery order, (Doc. 82),

and a Motions in Limine, (Doc. 84).

     For the reasons set forth herein, this court will grant

Defendants' Motion for Summary Judgment, (Doc. 71), deny

Plaintiff's motion for an extension of time, (Doc. 76), as moot
and treat Plaintiff's discovery responses, (Doc. 77-1), as
timely filed, and deny Defendants' Motion for Sanctions,
(Doc. 82), and Motions in Limine, (Doc. 84), as moot.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

     A.   **Factual Background**

     The majority of facts are not disputed, and any material
factual disputes will be specifically addressed in the relevant
analysis. Additional relevant facts will be addressed as
necessary throughout the opinion. This court reviews the facts
and all reasonable inferences in the light most favorable to
Plaintiff. See Scott v. Harris, 550 U.S. 372, 378 (2007).

     Defendants are police officers with the Greensboro Police
Department. (See Ex. A, Decl. of Lieutenant S.K. Flowers
("Flowers Decl.") (Doc. 72-1) ¶ 2; Ex. B, Decl. of Officer J.M.
Chavez ("Chavez Decl.") (Doc. 72-2) ¶ 2; Ex. E, Decl. of Officer
S.A. Alvarez ("Alvarez Decl.") (Doc. 72-5), ¶ 2.)

     On the night of September 9, 2016, Plaintiff and his
friends decided to go out in downtown Greensboro, North
Carolina. (Ex. C, Dep. of Zared Kinah Jones ("Jones Dep.")

-2-

(Doc. 72-3) at 7-8.)[1] Plaintiff and his friends parked on Elm
Street and were gathered outside of their car for around five
minutes while they discussed where they wanted to go next. (Id.
at 9-11.)

### 1. Initial Detention

While they were standing near the car, Defendants, who are
police officers, arrived on bicycles. (Id. at 18-19.) Plaintiff
is unsure of exactly how many officers approached his friends
and him. (Id. at 19.) Defendants asked Plaintiff and his friends
some questions. (Id.) Defendants never told Plaintiff and his
friends that they could not leave. (Jones Dep. (Doc. 72-3) at
21; see also Flowers Decl. (Doc. 72-1) ¶ 11; Chavez Decl.
(Doc. 72-2) ¶ 9.) Defendants never touched Plaintiff or drew
weapons. (Jones Dep. (Doc. 72-3) at 21-22.) Defendants asked
Plaintiff and his friends what they were doing in the area. (Id.
at 22.) When Plaintiff asked if his friends and he could leave,

---

[1] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

Defendants told them that they could leave, and Plaintiff and his friends went to a bar. (Id. at 21.)

### 2. **Plaintiff's Arrest**

Plaintiff went into the bar by himself. (Id. at 24.) He was later kicked out. (Id. at 25–26; Flowers Decl. (Doc. 72-1) ¶ 15; Alvarez Decl. (Doc. 72-5) ¶¶ 5, 7.) Defendants Flowers and Alvarez approached Plaintiff and his friends outside of the bar. (Flowers Decl. (Doc. 72-1) ¶ 16; Alvarez Decl. (Doc. 72-5) ¶¶ 4–6; Jones Dep. (Doc. 72-3) at 27.) After learning that Plaintiff had been kicked out of the bar, Defendants Flowers and Alvarez advised Plaintiff and his friends to leave, but Plaintiff refused. (Flowers Decl. (Doc. 72-1) ¶¶ 15–16; Alvarez Decl. (Doc. 72-5) ¶ 8.) The officers smelled the odor of alcohol on Plaintiff, observed that Plaintiff had slurred speech, was sweating significantly, was not comprehending the activity taking place around him, and was argumentative. (Alvarez Decl. (Doc. 72-5) ¶ 6; Flowers Decl. (Doc. 72-1) ¶ 17.) Based on Defendants' training and experience, Plaintiff was intoxicated. (Flowers Decl. (Doc. 72-1) ¶ 17; see also Alvarez Decl. (Doc. 72-5) ¶ 6.) Plaintiff argued with Defendants Flowers and Alvarez and continued to refuse to leave the area. (Flowers Decl. (Doc. 72-1) ¶ 19; Alvarez Decl. (Doc. 72-5) ¶ 10.) Defendants believed Plaintiff and his friends were blocking

-4-

access to the sidewalk outside of the bar. (Flowers Decl. (Doc. 72-1) ¶ 18; Alvarez Decl. (Doc. 72-5) ¶ 9.) After Plaintiff continued arguing with Defendants Alvarez and Flowers and refusing to leave the area, Defendant Flowers arrested Plaintiff. (Flowers Decl. (Doc. 72-1) ¶ 19-20; see also Alvarez Decl. (Doc. 72-5) ¶ 11.)

After Plaintiff was arrested, Defendant Alvarez went before Magistrate Brett Moore and described the events that led to Plaintiff's arrest. (Alvarez Decl. (Doc. 72-5) ¶ 13.) The Magistrate issued an order finding probable cause existed for Plaintiff's arrest. (Ex. 1 ("Magistrate's Order") (Doc. 12-1).)

### B. **Procedural Background**

Plaintiff, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff filed an Amended Complaint, (Am. Compl. for Violation of Civil Rights ("Am. Compl.") (Doc. 16)), and Defendants moved to dismiss, (Doc. 22). This court granted in part Defendants' motion to dismiss. (Mem. Op. & Order (Doc. 48) at 46-47.) Plaintiff's § 1983 unconstitutional detention and bystander liability claims, as well as Plaintiff's § 1983 unconstitutional arrest claim against Defendants Flowers and Alvarez survived the motion to dismiss. (Id.)

After discovery, Defendants moved for summary judgment, (Doc. 71), and filed a brief in support, (Mem. of Law in Supp.

-5-

of Defs.' Mot. for Summ. J. ("Defs.' Br.") (Doc. 72)). Plaintiff responded, (Br. in Supp. of Pl.'s Opp'n to the Defenses Mot. for Dismissal/Summ. J. ("Pl.'s Resp.") (Doc. 75-1)),[2] and additionally filed a motion for extension of time to respond to Defendants' discovery requests, (Doc. 76). Defendants replied to Plaintiff's response brief. (Reply Br. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply") (Doc. 79).)

## II. **MOTION FOR EXTENSION OF TIME**

Plaintiff moves the court for an extension of time to respond to Defendants' discovery requests. (Doc. 76 at 1.)[3] On March 31, 2022, the Magistrate Judge ordered Plaintiff to supplement his responses to Defendants' discovery requests on or before May 2, 2022. (Text Order 03/31/2022.) On May 9, 2022, a week after that deadline, Plaintiff attached his responses to Defendants' discovery requests to his brief accompanying his

---

[2] On May 25, 2022, this court denied as moot Plaintiff's motion for extension, (Doc. 74), and deemed as timely filed Plaintiff's response brief, (Doc. 75-1). (Doc. 80.) Plaintiff's response brief not only argues Defendants are not entitled to summary judgment but also appears to argue Plaintiff is entitled to summary judgment in his favor. (See Pl.'s Resp. (Doc. 75-1) at 9.) To the extent Plaintiff has embedded a motion for summary judgment in his response brief, that motion is (1) filed almost five months after the December 22, 2021 deadline for filing dispositive motions, (Doc. 60 at 1), and (2) does not comply with Local Rule 7.3(a), and accordingly will be denied.

[3] The date requested in Plaintiff's motion, November 12, 2021, appears to be an error because Plaintiff filed the motion on May 9, 2022, six months after the requested extension.

-6-

motion for an extension of time. (Doc. 77-1.) Defendants then took ten days to review Plaintiff's discovery responses before they filed their reply brief. (See Defs.' Reply (Doc. 79).)

Pro se litigants are traditionally held to less stringent standards than attorneys, particularly as to pleadings, by the courts. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although Plaintiff filed his discovery responses a week after the Magistrate Judge's deadline, Defendants had sufficient time to review his responses before filing their summary judgment reply brief. Considering Plaintiff's pro se status, this court will treat Plaintiff's discovery responses as timely filed. Having considered the motion, the court finds that Plaintiff's motion for extension, (Doc. 76), should be denied as moot, and Plaintiff's responses to Defendants' discovery requests, (Doc. 77-1), will be deemed timely filed as of May 9, 2022.

## III. **PLAINTIFF'S EXHIBITS**

Before addressing the merits of Defendants' Motion for Summary Judgment, this court finds it necessary to determine the extent to which this court may consider the exhibits attached to Plaintiff's response brief. Specifically, Defendants argue Exhibits A, I, J, the email attached to Exhibit K, and Exhibit L are objectionable under Federal Rule of Civil Procedure 56(c)(2). (Defs.' Reply (Doc. 79) at 2.)

-7-

## A. __Written Statements__

Exhibit A and the email attached to Exhibit K are both correspondences from Plaintiff's former attorney, Graham Holt, to the Greensboro mayor and city council regarding the underlying facts of this case. (<u>See</u> Doc. 75-2; Doc. 75-11 at 3–5.) To the extent Mr. Holt's correspondences can be considered an affidavit or declaration, they do not meet the requirements of Federal Rule of Civil Procedure 56, which requires affidavits or declarations "used to support or oppose a motion" for summary judgment "be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). Mr. Holt's knowledge of the underlying events of this case comes in large part from viewing police body worn camera footage of the events. (<u>See</u> Doc. 75-2 at 2; Doc. 75-11 at 4 (discussing the contents of "the footage").) Plaintiff does not contend Mr. Holt was present during Plaintiff's interactions with Defendants. Because Mr. Holt's characterizations of the underlying facts of this case are not based on personal knowledge, they are not proper for this court to consider at summary judgment. Therefore, this court will strike Plaintiff's Exhibit A, (Doc. 75-2), and the attachment to Exhibit K, (Doc. 75-11 at 3–5), from the record.[4]

---

[4] Additionally, neither of Mr. Holt's correspondences, assuming they can be treated as affidavits or declarations, meet the requirements of 28 U.S.C. § 1746 for unsworn declarations

Exhibit L is an August 24, 2017 document "Zared Kinah Jone's [sic] Complaint Against the Following Greensboro Police Department Officers." (Doc. 75-12.) To the extent this document is Plaintiff's affidavit or declaration, it does not meet the requirements of 28 U.S.C. § 1746 such that this court can consider it on summary judgment. See 28 U.S.C. § 1746(1) (requiring unsworn declaration to "declare . . . under penalty of perjury . . . that the" contents of the declaration are "true and correct"). Although Plaintiff has signed the statement, it was not signed under penalty of perjury, (see Doc. 75-12 at 4), making it equivalent to an unverified complaint. To survive summary judgment, Plaintiff cannot rest on unverified statements to create a genuine dispute of fact. Cf. Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden

_____

under penalty of perjury. Federal Rule of Civil Procedure 56 no longer requires a formal affidavit, but the document must still comply with the requirements of § 1746. See Fed. R. Civ. P. 56(c)(4) advisory committee's note to 2010 amendment. Because neither Exhibit A nor the email attached to Exhibit K meet the requirements of § 1746, they should be stricken for this separate reason.

of proof of his claim at trial."). Therefore, this court will strike Plaintiff's Exhibit L, (Doc. 75-12), from the record.[5]

## B.   **YouTube Video**

Exhibit I is a link to a YouTube video "Greensboro police brutality." (Doc. 75-9 at 2.) Defendants argue this court cannot consider this exhibit because it "has not been authenticated in any manner." (Defs.' Reply (Doc. 79) at 2.) Federal Rule of Civil Procedure 56(c)(2) requires "the material cited to . . . be presented in a form that would be admissible in evidence" at trial. Although at present the exhibit may not have been authenticated by Plaintiff, this court finds it likely that Plaintiff would be able to authenticate the YouTube video at trial considering the YouTube video purports to reflect the underlying events of this case involving Plaintiff. As will be more fully discussed _infra_ Section V.C, this court finds that even assuming Exhibit I could be authenticated, it does not create a genuine dispute of material fact.

This court will now address Defendants' motion for summary judgment.

---

[5] This court notes that Plaintiff was given notice of the motion for summary judgment filed against him and the opportunity "to file affidavits or evidence in rebuttal" along with his response brief, and he was "reminded that affidavits must be made on personal knowledge, contain facts admissible in evidence and be made by one shown to be competent to testify." (Doc. 73 at 1.)

-10-

## IV. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. If "the moving party discharges its burden . . ., the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718–19 (4th Cir. 2003).

A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289–90 (1968) (recognizing that a dispute is not genuine for summary judgment purposes when one party rests solely on allegations in the pleadings and does not produce any evidence to refute alternative arguments). This court must look to substantive law

-11-

to determine which facts are material because only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

In addition, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247–48. "[T]he non-moving party must do more than present a 'scintilla' of evidence in its favor." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 818 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 252). "What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First Nat'l Bank of Ariz., 391 U.S. at 289. Summary judgment should "be granted unless a reasonable jury could return a verdict for the nonmovant on the evidence presented." McLean, 332 F.3d at 719.

## V.  **ANALYSIS**

To prevail on a § 1983 claim, Plaintiff must show that he was deprived of a federal statutory or constitutional right and that "deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999). But if Defendants establish that Plaintiff failed to show a

-12-

violation of a clearly established constitutional right,
qualified immunity shields Defendants from liability. <u>See</u>
<u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).

## A.    **Unconstitutional Detention Claim**

Plaintiff brings a § 1983 claim for unconstitutional
detention arising out of Plaintiff's initial interaction with
Defendants. (<u>See</u> Mem. Op. & Order (Doc. 48) at 3–4.) Defendants
argue summary judgment should be granted on Plaintiff's
unconstitutional detention claim because there is no evidence a
Fourth Amendment seizure occurred, and even if such a seizure
did occur, it was supported by reasonable suspicion. (Defs.' Br.
(Doc. 72) at 10–17.)

The Fourth Amendment prohibits "unreasonable searches and
seizures." U.S. Const. amend. IV. "[N]ot every police-citizen
encounter will implicate this prohibition. For example, it is
well-settled that 'a seizure does not occur simply because a
police officer approaches an individual and asks a few
questions.'" <u>United States v. Cloud</u>, 994 F.3d 233, 241 (4th Cir.
2021) (citation omitted) (quoting <u>Florida v. Bostick</u>, 501 U.S.
429, 434 (1991)). In cases where the police-citizen encounter is
consensual, "no inquiry into the reasonableness of the officer's
justification for engaging the individual" is required. <u>Id.</u>

-13-

Although a consensual encounter does not implicate the Fourth Amendment, even "'brief investigatory stops' are 'seizures' that implicate the Fourth Amendment." Id. (quoting United States v. Curry, 965 F.3d 313, 319 (4th Cir. 2020)). The Supreme Court has held that a seizure triggering Fourth Amendment protection occurs when officers employ "'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." Torres v. Madrid, 141 S. Ct. 989, 995 (2021) (alteration in original) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

In this case, Plaintiff admits there was no physical force during his first encounter with Defendants. (See Jones Dep. (Doc. 72-3) at 21-22 ("Yeah. Nothing like they -- they didn't put their hands on us.").) Therefore, this court need only determine whether there is evidence of a "show of authority," Terry, 392 U.S. at 19 n.16, such that a Fourth Amendment seizure occurred.

### 1. **Acquiescence to Show of Authority**

"[A] show of authority occurs if the totality of the circumstances demonstrates that a reasonable person, measured objectively from an innocent citizen's perspective, 'would have believed that he was not free to leave.'" Cloud, 994 F.3d at 242 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

The Fourth Circuit has identified "six broad, non-exclusive categories of facts that may be relevant" to the determination of "whether a reasonable person . . . would have felt free to leave the scene or otherwise terminate the encounter with police." Id. Those categories are:

> (1) how many officers were present; (2) whether officers were in uniform and/or displayed firearms; (3) whether any officer touched the defendant or made any attempt to block or restrain his movement; (4) if the officer's questioning was "'conversational' rather than 'intimidating'"; (5) whether the officer informed the defendant that he suspected him of illegal activity, or treated the encounter as "routine"; and (6) if the officer asked for identification, how quickly the officer returned it to the defendant.

Id. at 242–43 (quoting United States v. Gray, 883 F.2d 320, 322–23 (4th Cir. 1989)).

But "a show of authority does not alone implicate the Fourth Amendment. . . . For a seizure to occur, the [individual] must actually submit to that show of authority." Id. at 242 (emphasis added). The "submission need not be explicit," but "[w]hatever form it takes, 'without actual submission to the police, there is at most an attempted seizure, which is not subject to Fourth Amendment protection.'" Id. (some internal quotation marks omitted) (quoting United States v. Stover, 808 F.3d 991, 996 (4th Cir. 2015)). The Fourth Circuit has held that an individual submitted to a show of authority when the individual, surrounded by a group of police officers, was

-15-

"extremely cooperative" with officers, volunteered his
identification badge—which an officer then pinned to his
uniform, and remained at the scene while other officers frisked
the other individuals present. See United States v. Black, 707
F.3d 531, 535–38 & n.3 (4th Cir. 2013). Conversely, an
individual does not submit to a show of authority when he
ignores an officer's orders and questions and walks away from
the officer "without restraint or hindrance." Cloud, 994 F.3d at
245. When an individual's "initial action [is] not to cooperate
with police and answer their questions," but instead to
"disobey[] a police order," the individual has not submitted to
any show of authority. Stover, 808 F.3d at 999–1001.

Defendants argue "there is no evidence indicating that the
officers' conversation with the group . . . was anything but
conversational." (Defs.' Br. (Doc. 72) at 11.) Defendants
further argue that because "the officers did not ask Plaintiff
for his identification, inform him that he was suspected of
illegal activity, or command him to stop and address them," and
because there was "a clear point of egress available to
[Plaintiff] had he wanted to end the encounter," there was not a
show of authority. (Id. at 11–12.) This court need not determine
whether there was a show of authority, because even if there
was, there is no genuine dispute of material of fact about

-16-

whether Plaintiff submitted to any show of authority by the officers.

Assuming Defendants blocked Plaintiff's free passage, Defendants argue "Plaintiff and his friends had not yet attempted to leave the area when they were approached by the officers . . . so, Plaintiff did not acquiesce to" Defendants' show of authority. (Id. at 12.) Defendants further argue there was no acquiescence because there is no evidence Plaintiff answered any of Defendants' questions. (Id. at 13.) This court agrees that Plaintiff did not submit to any show of authority and finds that summary judgment should be granted for Defendants as to Plaintiff's unconstitutional detention claim.

First, Plaintiff's own deposition testimony reflects that he never submitted to any show of authority. When Defendants approached Plaintiff and his friends, Plaintiff was "close enough to touch the car," (Jones Dep. (Doc. 72-3) at 17), and thus was not blocked by Defendants because he could have gotten into the car and left the scene. Plaintiff and his friends had not tried to leave the area prior to Defendants' arrival, nor were they in the process of leaving when Defendants arrived. (Id. at 20.) When Defendants arrived, they asked the group questions, but there is no evidence Plaintiff or anyone else answered those questions. (See id. at 19–20.) According to

Plaintiff, Defendants never told him that he could not leave. (Id. at 21.) And when Plaintiff asked if he could leave, Defendants responded, "Yes, you all can go." (Id.) Plaintiff admits that he did not interpret Defendants' questions as an order.

> Q. They asked you what you were doing in that area?
> A. (Nods head up and down)
> Q. Okay. And you didn't take that as an instruction to leave at that point?
> A. No. Why would I?
> Q. Okay. I'm just asking. But then you asked to leave ---
> A. (Nods head up and down)
> Q. --- and they let you go? All right.

(Id. at 22.)

Second, Plaintiff's deposition testimony aligns with the sworn declarations of Defendants who were at the scene. Defendant Flowers stated that "[t]he officers did not make any formation 'surrounding' [Plaintiff] or his companions." (Flowers Decl. (Doc. 72-1) ¶ 6.) Defendant Flowers also confirmed Plaintiff "was free to leave at any time during the conversation" with Defendants. (Id. ¶ 11.) After Plaintiff asked if he could leave, "as [the group] left, they continued to yell at the officers." (Chavez Decl. (Doc. 72-2) ¶ 10.)

Although "a range of conduct exists between . . . 'passive acquiescence' . . . and . . . headlong flight," Stover, 808 F.3d at 998, this court finds there is no genuine dispute of material

-18-

fact as to whether Plaintiff acquiesced to any show of authority. From the time Defendants arrived on the scene to the time Plaintiff and his friends asked to leave and left, the evidence shows Plaintiff and his friends were far from being "extremely cooperative," Black, 707 F.3d at 536, with Defendants. On the contrary, they "appeared angry" and were "yell[ing] at the officers." (Chavez Decl. (Doc. 72-2) ¶¶ 6, 10.) Because the evidence before this court reflects that Plaintiff did not submit to a show of authority, "'there [was] at most, an attempted seizure,' which is not subject to Fourth Amendment protections." Cloud, 994 F.3d at 242 (quoting Stover, 808 F.3d at 996).

Plaintiff argues Defendants' declarations are contradictory, and therefore summary judgment should be denied. (See Pl.'s Resp. (Doc. 75-1) at 2, 6.) For example, Plaintiff contends Chavez and Flowers' declarations are contradictory because they "allege different facts, which call[s] into question the credibility of both statements." (Id. at 2.) On summary judgment, this court does not make credibility determinations or weigh the evidence. Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and

-19-

the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]").

Plaintiff also argues there was a show of authority because "[o]fficers with the[ir] weapons displayed on their hips, with badges, in uniform, on police bikes stopped what they were doing and approached the plaintiff to address Plaintiff." (Pl.'s Resp. (Doc. 75-1) at 6.) But nowhere does Plaintiff argue that he submitted to such show of authority. (See id.) Plaintiff fails to show there is a genuine dispute of material fact regarding Plaintiff's unconstitutional detention claim.

This court finds Defendants have discharged their burden of proving "that there is an absence of evidence to support [Plaintiff's] case," Celotex, 477 U.S. at 325, and Plaintiff has failed to offer evidence showing there is a genuine question whether Plaintiff submitted to any show of authority by Defendants. Accordingly, this court will grant summary judgment for Defendants as to Plaintiff's unconstitutional detention claim.

**B.  Bystander Liability Claim**

Plaintiff also brings a § 1983 claim arising out of Plaintiff's initial encounter with Defendants under a theory of bystander liability. (See Mem. Op. & Order (Doc. 48) at 17.) To bring a bystander liability claim, "a plaintiff must demonstrate

-20-

that a law enforcement officer (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act." Stevenson v. City of Seat Pleasant, 743 F.3d 411, 417 (4th Cir. 2014) (alterations and internal quotation marks omitted) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002)). "[S]uch a duty attaches when an officer observes or has reason to know that a 'constitutional violation [is being] committed' by other officers and possesses 'a realistic opportunity to intervene to prevent the harm from occurring.'" Randall, 302 F.3d at 203-04 (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

As explained above, there was no constitutional violation arising out of Defendants' initial encounter with Plaintiff, supra Section V.A, so Plaintiff's claim for bystander liability also fails. See Lytes v. Smith, 11 F. Supp. 3d 527, 541 (D.S.C. 2014) (granting the defendants' motion for summary judgment on the plaintiff's § 1983 claim of bystander liability against an officer because no constitutional violation occurred). This court will grant summary judgment for Defendants as to

Plaintiff's bystander liability claim regarding the initial detention.[6]

## C.  **Unconstitutional Arrest Claim**

Plaintiff also brings a § 1983 claim for unconstitutional arrest arising out of Plaintiff's second interaction with Defendants Alvarez and Flowers. (See Mem. Op. & Order (Doc. 48) at 47.) Defendants argue they had probable cause to arrest Plaintiff, so there was no Fourth Amendment violation. (Defs.' Br. (Doc. 72) at 17–20.)

The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV. "An arrest is a seizure of the person." Wilson v. Kittoe, 337 F.3d 392, 398 (4th Cir. 2003) (quoting Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001)). Generally, warrantless seizures without probable cause are unreasonable. See Bailey v. United States, 568 U.S. 186, 192 (2013); Curry, 965 F.3d at 319. But "[a] warrantless arrest is reasonable if the officer has probable cause to believe the suspect committed a crime in the officer's presence." District of Columbia v.

---

[6] This court notes Plaintiff does not substantively address bystander liability in his response. (See Pl.'s Resp. (Doc. 75-1).) "Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue." Oliver v. Baity, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) (collecting cases). The failure to address bystander liability in Plaintiff's response brief is another reason supporting this court granting summary judgment on his bystander liability claim.

Wesby, 138 S. Ct. 577, 586 (2018); see also Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

With respect to § 1983 claims based on arrests without probable cause, "[w]here . . . an arrest is based on probable cause, it cannot result in a constitutional violation. And in the absence of a constitutional violation, qualified immunity applies and the court need not address whether the constitutional right in question was clearly established." Cranford v. Kluttz, 278 F. Supp. 3d 848, 873 (M.D.N.C. 2017) (quoting Swick v. Wilde, No. 1:10-cv-303, 2012 WL 3780350, at *9 (M.D.N.C. Aug. 31, 2012)); see also Durham v. Horner, 690 F.3d 183, 190 (4th Cir. 2012) (finding probable cause for the arrest and thus no "essential constitutional violation underlying a § 1983 claim"); Sowers v. City of Charlotte, No. 3:14-cv-523-RJC-DCK, 2015 WL 8491498, at *4 (W.D.N.C. Dec. 9, 2015) ("Because the officers had probable cause, Plaintiff's arrest was valid, and there was no violation of his constitutional rights. There is accordingly no basis for a finding of any liability on the part of the defendant officers under federal or state law.").

The critical inquiry is whether the facts establish probable cause for the arrest. "Probable cause to justify an arrest means facts and circumstances within the officer's

knowledge that are sufficient to warrant a prudent person, or
one of reasonable caution, in believing, in the circumstances
shown, that the suspect has committed an offense." Humbert v.
Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir.
2017) (alterations and internal quotation marks omitted)
(quoting Cahaly v. Larosa, 796 F.3d 399, 407 (4th Cir. 2015)).
"Probable cause is determined by a 'totality-of-the-
circumstances' approach." Smith v. Munday, 848 F.3d 248, 253
(4th Cir. 2017) (quoting Illinois v. Gates, 462 U.S. 213, 230
(1983)); see Gates, 462 U.S. at 243 n.13 ("[P]robable cause
requires only a probability or substantial chance of criminal
activity, not an actual showing of such activity."). Courts must
consider "the whole picture," Wesby, 138 S. Ct. at 588 (quoting
United States v. Cortez, 449 U.S. 411, 417 (1981)), and evidence
sufficient to secure a conviction is not required, Hupp v. Cook,
931 F.3d 307, 318 (4th Cir. 2019). Rather, probable cause
"requires only a probability or substantial chance of criminal
activity, not an actual showing of such activity," which "is not
a high bar." Wesby, 138 S. Ct. at 586 (quoting Gates, 462 U.S.
at 243 n.13; Kaley v. United States, 134 S. Ct. 1090, 1103
(2014)).

    Plaintiff was arrested for violating North Carolina General
Statutes Sections 14-444 and 14-159.13 (Magistrate's Order

(Doc. 12-1) at 2.) Section 14-444 makes it unlawful for any person in a public place to be intoxicated and disruptive. "Intoxicated" is defined as "the condition of a person whose mental or physical functioning is presently substantially impaired as a result of the use of alcohol." N.C. Gen. Stat. § 14-443(2). "[P]ublic place" is defined as "a place which is open to the public, whether it is publicly or privately owned." Id. § 14-443(3).

"[M]ere public intoxication standing alone [is] no longer to be considered unlawful and further, that for there to be a chargeable offense, the intoxicated person must be disruptive in one or more of the ways described in G.S. 14-444(a), subsection (1) through (5)." State v. Cooke, 49 N.C. App. 384, 390, 271 S.E.2d 561, 565 (1980). An individual violates Section 14-444 when he is disruptive by:

(1) Blocking or otherwise interfering with traffic on a highway or public vehicular area, or
(2) Blocking or lying across or otherwise preventing or interfering with access to or passage across a sidewalk or entrance to a building, or
(3) Grabbing, shoving, pushing or fighting others or challenging others to fight, or
(4) Cursing or shouting at or otherwise rudely insulting others, or
(5) Begging for money or other property.

N.C. Gen. Stat. § 14-444(a).

Defendants argue they had probable cause to believe Plaintiff committed the state-law crime of public intoxication

-25-

and disruption because "the evidence on record demonstrates that Plaintiff exhibited behavior indicative of intoxication, including excessive sweating, slurred speech, aggressive speech and yelling, difficulty comprehending others, and his breath smelled of alcohol." (Defs.' Br. (Doc. 72) at 20.) Defendants also point to Plaintiff's refusal to leave the area after Defendants ordered him to leave. (Id.) On the other hand, Plaintiff argues "[t]here is no actual evidence to show [P]laintiff consumed any alcohol while downtown or exhibit[ed] the smell of alcohol or intoxicated behavior while downtown." (Pl.'s Resp. (Doc. 75-1) at 3.) In his deposition, Plaintiff asserted he did not have any alcoholic drinks after he was downtown until he ordered a beer at the bar. (Jones Dep. (Doc. 72-3) at 26.)

Two cases are instructive in determining whether Defendants had probable cause to arrest Plaintiff. In Cooke, deputy sheriffs responded to a call complaining of a man yelling outside of an inn. 49 N.C. App. at 385-87, 271 S.E.2d at 562-63. The deputies observed the defendant standing in the parking lot shouting, smelled alcohol on the defendant, and observed that the defendant's eyes were "wild and glassy looking." Id. The deputies arrested the defendant. Id. On appeal, the defendant argued the deputies did not have probable cause to arrest him.

-26-

Id. The North Carolina Court of Appeals held that although the defendant's conduct was not in violation of Section 14-444, "the complaint received by the officers, combined with the conduct they observed, gave them reasonable grounds to suspect that defendant was in violation of the statute and that they therefore had probable cause to make the arrest." Id. at 390, 271 S.E.2d at 565.

Similarly, in State v. Sanderlin, deputy sheriffs were attempting to serve an arrest warrant and approached the defendant and two other individuals. 261 N.C. App. 116, 817 S.E.2d 628, 2018 WL 3978020, at *1 (Aug. 21, 2018) (unpublished table decision). Upon questioning from the deputies, the defendant began yelling and "excitedly speaking." Id. The deputy noticed the defendant had a forty-ounce beer in his pocket and detected the odor of alcohol on the defendant. Id. Due to the defendant's behavior and the deputy's observations, the deputy placed the defendant under arrest. Id. On appeal, the defendant argued there was not probable cause justifying his arrest. See id. at *2. The North Carolina Court of Appeals held that "like the defendant in Cooke, Defendant's conduct and public intoxication created reasonable grounds for [the deputy] to suspect Defendant was in violation of [Section 14-444], giving him probable cause to arrest Defendant." Id. at *3.

In this case, Defendants Alvarez and Flowers observed a commotion outside of the bar. (See Flowers Decl. (Doc. 72-1) ¶ 13; Alvarez Decl. (Doc. 72-5) ¶ 5.) The "commotion" was Plaintiff being removed from the bar by a bouncer. (Alvarez Decl. (Doc. 72-5) ¶ 5.) Defendant Alvarez "smelled alcohol on [Plaintiff's] breath and noticed that he had slurred speech" and "was sweating significantly." (Id. ¶ 6.) Defendant Alvarez also observed Plaintiff "raise[] his voice and yell[] at [Defendant Alvarez] and the other officers." (Id. ¶ 10.) In addition to Defendant Alvarez's observations, Defendant Flowers "observed . . . a commotion outside of the Boiler Room bar" involving Plaintiff. (Flowers Decl. (Doc. 72-1) ¶¶ 13-14.) Defendant Flowers "spoke with a member of [the bar's] security staff" who "confirmed that [Plaintiff] . . . had been ejected from the bar." (Id. ¶ 15.) Defendant Flowers noticed that Plaintiff "did not seem to be comprehending any of the activity taking place around him, including [Defendant Flowers'] orders to leave the area." (Id. ¶ 17.) He also observed Plaintiff "yelling," "arguing," and "invading [Defendant Flowers'] personal space." (Id.) The interaction between Defendants Flowers and Alvarez and Plaintiff occurred on the sidewalk near the bar, which is a "public place" under North Carolina General Statute Section 14-444(a). (See id. ¶ 16; Alvarez Decl. (Doc. 72-5) ¶¶ 5-7.) Like

-28-

the officers in <u>Cooke</u> and <u>Sanderlin</u>, Defendants Alvarez and Flowers had reasonable grounds to suspect Plaintiff was in violation of Section 14-444 because they observed Plaintiff being removed from a bar and Plaintiff's conduct towards them. <u>See</u> <u>Cooke</u>, 49 N.C. App at 390, 271 S.E.2d at 565; <u>Sanderlin</u>, 2018 WL 3978020, at *3.

Plaintiff takes issue with Defendants Alvarez and Flowers' declarations and argues the YouTube video contradicts their declarations.[7] (<u>See</u> Pl.'s Resp. (Doc. 75-1) at 3-8.) On the contrary, this court finds the YouTube video offered by Plaintiff, if anything, bolsters Defendants' declarations. Although not clear from the video, the video appears to begin outside of the bar shortly after Plaintiff had been removed. One individual, presumably Plaintiff, is standing off to the side. One of the officers approaches the group and tells the other officers Plaintiff has been kicked out, and the group needs to

_____

[7] Throughout Plaintiff's response brief, he points out "contradict[ions]" in Defendants' evidence. (<u>See, e.g.</u>, Pl.'s Resp. (Doc. 75-1) at 2.) While it may be true that there are factual discrepancies in the officers' declarations as argued by Plaintiff, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Ballinger v. N.C. Agric. Extension Serv.</u>, 815 F.2d 1001, 1005 (4th Cir. 1987) (quoting <u>Anderson</u>, 477 U.S. at 247-48). Plaintiff cannot create a genuine issue of material fact by pointing to non-essential factual discrepancies. <u>Cf.</u> <u>Celotex</u>, 477 U.S. at 322.

-29-

leave the area. Yelling and arguing ensues directed at the officers.

This court finds the YouTube video fails to create a genuine dispute of material fact regarding whether the officers had probable cause to arrest Plaintiff for public intoxication and disruption. The YouTube video appears to mirror the descriptions contained in Defendants Alvarez and Flowers' declarations. No one is identified in the video, and the video does not appear to capture the entirety of the interaction outside of the bar. Notably, the court cannot glean from the video anything about Plaintiff's interactions with Defendants Flowers and Alvarez because the individual this court presumes to be Plaintiff is in the background of the video or not in the frame of the video at all for portions of the video. Even assuming Plaintiff was not actually in violation of Section 14-444, Plaintiff has failed to create a genuine question whether the deputies reasonably suspected Plaintiff was in violation of that statute. The issue is not whether Plaintiff in fact violated the statute but whether Defendants Alvarez and Flowers rationally believed there was "a substantial chance" that Plaintiff was violation Section 14-444.[8] See Wesby, 138 S. Ct. at

---

[8] Because there is no genuine dispute of material fact as to whether Defendants had probable cause to believe Plaintiff was violating Section 14-444, this court need not determine whether

586 (quoting <u>Gates</u>, 462 U.S. at 243 n.13); <u>see also</u> <u>Gerstein v.</u>
<u>Pugh</u>, 420 U.S. 103, 121 (1975). For the reasons stated above,
this court finds Defendants had probable cause to arrest
Plaintiff for violating Section 14-444. Because Defendants had
probable cause to arrest Plaintiff, Plaintiff's arrest did not
violate the Fourth Amendment. Therefore, this court will grant
summary judgment for Defendants as to Plaintiff's
unconstitutional arrest claim.

Because this court has determined that summary judgment
should be granted to Defendants on all claims, it does not reach
the question of whether Defendants are entitled to qualified
immunity.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, this court will deny as moot
Plaintiff's motion for extension, (Doc. 76), and will grant
Defendants' Motion for Summary Judgment, (Doc. 71).

**IT IS THEREFORE ORDERED** that Plaintiff's motion for
extension, (Doc. 76), is **DENIED** as moot and that Plaintiff's
discovery responses, (Doc. 77-1), are deemed timely filed as of
May 9, 2022.

───────────────

there is a genuine dispute of material fact as to whether
Defendants had probable cause to believe Plaintiff was violating
North Carolina's second-degree trespass statute.

-31-

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (Doc. 71), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions, (Doc. 82), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motions in Limine, (Doc. 84), is **DENIED** as moot.

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 5th day of July, 2022.

_William L. Osteen, Jr._
United States District Judge